# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF WISCONSIN

DYLAN N. BORGEN,

                Plaintiff,

v.

JARED HOY, LT. EDWARDS, BRADLEY EVERSON, SGT. MICHAEL BUETTNER, and C.O. GAYDEN,

                Defendants.

Case No. 25-CV-863-JPS

**ORDER**

    Plaintiff Dylan N. Borgen, an inmate confined at Columbia Correctional Institution ("CCI"), filed a pro se complaint under 42 U.S.C. § 1983 alleging that Defendants violated his constitutional rights. ECF No. 1. This Order resolves Plaintiff's motion for leave to proceed without prepaying the filing fee and screens his complaint.

**1.    MOTION FOR LEAVE TO PROCEED WITHOUT PREPAYING THE FILING FEE**

    The Prison Litigation Reform Act ("PLRA") applies to this case because Plaintiff was a prisoner when he filed his complaint. *See* 28 U.S.C. § 1915(h). The PLRA allows the Court to give a prisoner plaintiff the ability to proceed with his case without prepaying the civil case filing fee. *Id.* § 1915(a)(2). When funds exist, the prisoner must pay an initial partial filing fee. 28 U.S.C. § 1915(b)(1). He must then pay the balance of the $350 filing fee over time, through deductions from his prisoner account. *Id.*

    On July 16, 2025, the Court ordered Plaintiff to pay an initial partial filing fee of $15.87. ECF No. 6. Plaintiff paid that fee on August 14, 2025.

The Court will grant Plaintiff's motion for leave to proceed without prepaying the filing fee. ECF No. 2. He must pay the remainder of the filing fee over time in the manner explained at the end of this Order.

## 2. SCREENING THE COMPLAINT

### 2.1 Federal Screening Standard

Under the PLRA, the Court must screen complaints brought by prisoners seeking relief from a governmental entity or an officer or employee of a governmental entity. 28 U.S.C. § 1915A(a). The Court must dismiss a complaint if the prisoner raises claims that are legally "frivolous or malicious," that fail to state a claim upon which relief may be granted, or that seek monetary relief from a defendant who is immune from such relief. 28 U.S.C. § 1915A(b).

In determining whether the complaint states a claim, the Court applies the same standard that applies to dismissals under Federal Rule of Civil Procedure 12(b)(6). *See Cesal v. Moats*, 851 F.3d 714, 720 (7th Cir. 2017) (citing *Booker-El v. Superintendent, Ind. State Prison*, 668 F.3d 896, 899 (7th Cir. 2012)). A complaint must include "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). The complaint must contain enough facts, accepted as true, to "state a claim for relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows a court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citing *Twombly*, 550 U.S. at 556).

To state a claim for relief under 42 U.S.C. § 1983, a plaintiff must allege that someone deprived him of a right secured by the Constitution or the laws of the United States and that whoever deprived him of this right

was acting under the color of state law. *D.S. v. E. Porter Cnty. Sch. Corp.*, 799 F.3d 793, 798 (7th Cir. 2015) (citing *Buchanan–Moore v. County of Milwaukee*, 570 F.3d 824, 827 (7th Cir. 2009)). The Court construes pro se complaints liberally and holds them to a less stringent standard than pleadings drafted by lawyers. *Cesal*, 851 F.3d at 720 (citing *Perez v. Fenoglio*, 792 F.3d 768, 776 (7th Cir. 2015)).

### 2.2 Plaintiff's Allegations

Plaintiff names Defendants Jared Hoy ("Hoy"), Lt. Edwards ("Edwards"), Bradley Everson ("Everson"), Sgt. Michael Buettner ("Buettner"), and C.O. Gayden ("Gayden"). ECF No. 1 at 1. On October 22, 2024, at approximately 11:10 a.m., Gayden approached Plaintiff and started arguing with him over Plaintiff's repeated requests for a 'white shirt' (senior ranking security official). *Id.* at 2. Plaintiff had been requesting mental health treatment for an extended period of time, but it was either unreasonably delayed or denied. *Id.* Plaintiff experienced a state of panic and mania and had delusions that caused him to fear for his life. *Id.* Plaintiff told Gayden he feared for his life; Gayden merely laughed and made fun of Plaintiff. *Id.* As a result, Plaintiff became agitated by Gayden's demeanor and insulting remarks. *Id.*

Plaintiff asked for a white shirt more than fifteen times and told Gayden of his suicidal ideation and intent to self-harm. *Id.* at 2–3. Against protocol, Gayden told Plaintiff to return to his cell and 'lock in.' *Id.* at 3. Gayden informed Plaintiff that he had no 'real' intent to self-harm. *Id.* Plaintiff told Gayden that he feared he would hurt himself if he went back to his cell and renewed his request for a supervisor. *Id.* Gayden abruptly became physical and scratched Plaintiff's neck, shoulder, and arm. *Id.* Plaintiff jerked away in fear for his safety and pleaded with Gayden to stop.

*Id.* Gayden continued her actions instead. *Id.* Gayden deployed an entire canister of OC spray to the backside of Plaintiff's body while Plaintiff tried to get away from the hostile Gayden. *Id.* Gayden used the OC spray against policy because there was no threat to her safety or to anyone else. *Id.* Fearing for his safety, Plaintiff grabbed a chair and flung it towards Gayden in self-defense. *Id.* Gayden chased Plaintiff around the dayroom and eventually grabbed Plaintiff and attempted to wrestle him to the ground. *Id.* Plaintiff was able to free himself, but he was unable to see because of the OC spray. *Id.* Gayden suddenly struck Plaintiff in the face. *Id.* at 4. Plaintiff began swinging in all directions to protect himself from Gayden, who continued punching Plaintiff. *Id.*

Other prison staff, including Edwards, separated Plaintiff and Gayden. *Id.* Plaintiff was placed in TLU where he received only minimal treatment for his injuries. *Id.* Plaintiff was denied observation status to prevent a self-harm incident; he was also denied the ability to speak to psychological services about his mental health state and suspected schizophrenia. *Id.* Plaintiff spoke directly with Edwards and Buettner about his need for medical treatment and they denied his requests. *Id.* Plaintiff also requested assistance from the Security Director, Everson, and made him aware of the abuse and retaliation. *Id.* Instead of helping Plaintiff, Everson authorized an erroneous conduct report indicating that Plaintiff had no mental health issues. *Id.* Everson directed the offense be charged as a major violation for assaulting staff. *Id.*

Plaintiff requested surveillance footage for his defense. *Id.* Plaintiff's request was denied, and he was denied the opportunity to defend himself. *Id.* Plaintiff filed an inmate complaint about the incident, but it was denied in bad faith because Plaintiff's complaint was not untimely. *Id.* Plaintiff was

found guilty of the conduct report and was transferred to CCI, a maximum-security facility. *Id.* at 5. Plaintiff notified Hoy about his complaint, but he refused to respond. *Id.* Plaintiff continues to experience breathing irregularities as a result of Gayden's assault; this impacts his daily activities as well as his ability to sleep. *Id.* Plaintiff also suffers from posttraumatic stress and experiences anxiety, depression, panic attacks, and insomnia. *Id.*

### 2.3 Analysis

First, the Court will allow Plaintiff to proceed against Gayden for an excessive force claim. The Eighth Amendment prohibits the "unnecessary and wanton infliction of pain" on prisoners. *Outlaw v. Newkirk*, 259 F.3d 833, 837 (7th Cir. 2001). When a correctional officer is accused of using excessive force, the core inquiry is "whether force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm." *Hudson v. McMillian*, 503 U.S. 1, 7 (1992); *Santiago v. Walls*, 599 F.3d 749, 757 (7th Cir. 2010). Several factors are relevant to this determination, including the need for force, the amount of force applied, the threat the officer reasonably perceived, the effort made to temper the severity of the force used, and the extent of the injury caused to the prisoner. *Hudson*, 503 U.S. at 7; *Fillmore v. Page*, 358 F.3d 496, 504 (7th Cir. 2004). "When prison officials maliciously and sadistically use force to cause harm, contemporary standards of decency always are violated. This is true whether or not significant injury is evident." *Hudson*, 503 U.S. at 9.

Here, Plaintiff alleges that Gayden aggressively placed her hands around Plaintiff's neck, shoulder and arm. Plaintiff also alleges that Gayden unnecessarily deployed an entire can of OC spray on Plaintiff when no threat existed. Plaintiff also alleges that Gayden punched him in the face while he was defenseless. At the pleading stage, these allegations are

sufficient to proceed against Gayden for an Eighth Amendment excessive force claim.

Second, the Court finds that Plaintiff may proceed against Edwards, Buettner, and Everson on an Eighth Amendment deliberate indifference claim for their indifference to Plaintiff's serious medical need. The Eighth Amendment secures an inmate's right to medical care. Prison officials violate this right when they "display deliberate indifference to serious medical needs of prisoners." *Greeno v. Daley*, 414 F.3d 645, 652 (7th Cir. 2005) (internal quotation omitted). Deliberate indifference claims contain both an objective and a subjective component: the inmate "must first establish that his medical condition is objectively, 'sufficiently serious,'; and second, that prison officials acted with a 'sufficiently culpable state of mind,' i.e., that they both knew of and disregarded an excessive risk to inmate health." *Lewis v. McLean*, 864 F.3d 556, 562–63 (7th Cir. 2017) (quoting *Farmer v. Brennan*, 511 U.S. 825, 834 (1994) (internal citations omitted)). "A delay in treating non-life-threatening but painful conditions may constitute deliberate indifference if the delay exacerbated the injury or unnecessarily prolonged an inmate's pain." *Arnett v. Webster*, 658 F.3d 742, 753 (7th Cir. 2011) (citing *McGowan v. Hulick*, 612 F.3d 636, 640 (7th Cir. 2010)). The length of delay that is tolerable "'depends on the seriousness of the condition and the ease of providing treatment.'" *Id.* (quoting *McGowan*, 612 F.3d at 640).

At the screening stage, the Court finds that Plaintiff's allegations are sufficient to proceed against Edwards, Buettner, and Everson. Plaintiff alleges that he directly asked these defendants for medical assistance, including mental health treatment, following Gayden's assault. These defendants refused Plaintiff treatment. At the pleading stage, Plaintiff may

proceed against Edwards, Buettner, and Everson on an Eighth Amendment deliberate indifference claim for their indifference to Plaintiff's serious medical needs

Third, the Court finds that Plaintiff may not proceed against any defendants for a Fourteenth Amendment claim for a deprivation of liberty without due process. A prisoner challenging the process he was afforded in a prison disciplinary proceeding must meet two requirements: (1) he has a liberty or property interest that the state has interfered with; and (2) the procedures he was afforded upon that deprivation were constitutionally deficient. *Scruggs v. Jordan*, 485 F.3d 934, 939 (7th Cir. 2007) (citing *Rowe v. DeBruyn*, 17 F.3d 1047, 1053 (7th Cir. 1994)).

"A prisoner's liberty interest, and incumbent entitlement to procedural due process protections, generally extends only to freedom from deprivations that 'impose[ ] atypical and significant hardship on the inmate in relation to the ordinary incidents of prisoner life." *Lekas v. Briley*, 405 F.3d 602, 608 (7th Cir. 2005) (quoting *Sandin v. Conner*, 515 U.S. 472, 483–84 (1995)). In the absence of an "atypical and significant" deprivation, the procedural protections of the Due Process Clause are not triggered. *Id.* Disciplinary segregation can trigger due process protections. *Marion v. Columbia Correctional Inst.*, 559 F.3d 693, 697 (7th Cir. 2009) (citations omitted). When making the determination whether an inmate is entitled to such protections, courts analyze "the combined import of the duration of the segregative confinement and the conditions endured by the prisoner during that period." *Id.* If conditions in segregation are significantly harsher than those in the normal prison environment, then a liberty interest may arise even when the duration of the segregation, standing alone, would not trigger such an interest. *Id.* at 697–98. On the one hand, "six months of

Page 7 of 13
Case 2:25-cv-00863-JPS    Filed 09/17/25    Page 7 of 13    Document 7

segregation is 'not such an extreme term' and, standing alone, would not trigger due process rights." *Id.* at 698 (quoting *Whitford v. Boglino*, 63 F.3d 527, 533 (7th Cir. 1995)). On the other end of the spectrum, transfer to a maximum-security prison and placement in segregated confinement for an indefinite duration where virtually all sensory and environmental stimuli are denied, little human contact is permitted, and prisoners otherwise eligible for parole are disqualified from parole eligibility, taken together, impose an atypical and significant hardship within the correctional context. *Id.* at 697 (citing *Wilkinson v. Austin*, 549 U.S. 209, 224 (2005)).

Once a liberty or property interest has been invoked, the Court looks to what process was due. Prison disciplinary hearings satisfy procedural due process requirements where an inmate is provided: (1) written notice of the charge against the prisoner twenty four (24) hours prior to the hearing; (2) the right to appear in person before an impartial body; (3) the right to call witnesses and to present physical/documentary evidence, but only when doing so will not unduly jeopardize the safety of the institution or correctional goals; and (4) a written statement of the reasons for the action taken against the prisoner. *See Wolff v. McDonnell*, 418 U.S. 539, 563–69 (1974); *Cain v. Lane*, 857 F.2d 1139, 1145 (7th Cir. 1988). Not only must the requirements of *Wolff* be satisfied, but the decision of the disciplinary hearing board must be supported by "some evidence." *Black v. Lane*, 22 F.3d 1395, 1402 (7th Cir. 1994).

Here, Plaintiff's complaint does not contain facts showing that Defendants interfered with a liberty interest. Plaintiff alleges generally that he was transferred to CCI, but he does not elaborate on any of the conditions he experienced during that time or on the duration of the punishment. On these facts alone, the Court cannot determine that Plaintiff

suffered an atypical and significant deprivation. *See Marion*, 559 F.3d at 698. Accordingly, based on the allegations in Plaintiff's complaint, the Court cannot determine that Plaintiff had a protected liberty interest. As such, Plaintiff may not proceed on a due process claim.

Fourth, the Court will not allow Plaintiff to proceed against Hoy. Generally, the denial of a grievance "by persons who otherwise did not cause or participate in the underlying conduct states no claim." *Owens v. Hinsley*, 635 F.3d 950, 953 (7th Cir. 2011); *see also George v. Smith*, 507 F.3d 605, 609 (7th Cir. 2007). "If there is 'no personal involvement by the warden [in an inmate's medical care] outside the grievance process,' that is insufficient to state a claim against the warden." *Neely v. Randle*, No. 12 C 2231, 2013 WL 3321451, at *3 (N.D. Ill. June 13, 2013) (quoting *Gevas v. Mitchell,* 492 Fed. Appx. 654, 660 (7th Cir. 2012)). Plaintiff names Hoy only for his involvement in denying his inmate complaints. As such, the Court will dismiss Hoy for the failure to state a claim against him.

Finally, Plaintiff also alleges state law assault and battery claims against Gayden. In Wisconsin, a battery, or assault and battery, is a common law tort, defined as an intentional contact with another that is unpermitted. *Estate of Thurman v. City of Milwaukee*, 197 F. Supp. 2d 1141, 1151–52 (E.D. Wis. 2002) (citing *McCluskey v. Steinhorst*, 45 Wis. 2d 350, 357 (1970)). At this early stage and based on the same facts as the excessive force claim, the Court will exercise its supplemental jurisdiction under 28 U.S.C. § 1367(a) and will allow Plaintiff to proceed on a state law claim of assault and battery against Gayden.

3. **CONCLUSION**

In light of the foregoing, the Court finds that Plaintiff may proceed on the following claims pursuant to 28 U.S.C. § 1915A(b):

**Claim One:** Eighth Amendment excessive force claim against Gayden.

**Claim Two:** Eighth Amendment claim against Edwards, Buettner, and Everson for their deliberate indifference to Plaintiff's serious medical needs.

**Claim Three:** Wisconsin state law assault and battery claim against Gayden.

The Court has enclosed with this Order guides prepared by court staff to address common questions that arise in cases filed by prisoners. These guides are entitled, "Answers to Prisoner Litigants' Common Questions" and "Answers to Pro Se Litigants' Common Questions." They contain information that Plaintiff may find useful in prosecuting his case.

Defendants should take note that, within forty-five (45) days of service of this Order, they are to file a summary judgment motion that raises all exhaustion-related challenges. The Court will issue a scheduling order at a later date that embodies other relevant deadlines.

Accordingly,

**IT IS ORDERED** that Plaintiff's motion for leave to proceed without prepaying the filing fee, ECF No. 2, be and the same is hereby **GRANTED**;

**IT IS FURTHER ORDERED** that Defendant Hoy be and the same is hereby **DISMISSED** from this action;

**IT IS FURTHER ORDERED** that under an informal service agreement between the Wisconsin Department of Justice and this Court, a copy of the complaint and this Order have been electronically transmitted to the Wisconsin Department of Justice for service on Defendant **Gayden, Edwards, Buettner, and Everson**;

**IT IS FURTHER ORDERED** that under the informal service agreement, Defendants shall file a responsive pleading to the complaint within sixty (60) days;

**IT IS FURTHER ORDERED** that Defendants raise any exhaustion-related challenges by filing a motion for summary judgment within forty-five (45) days of service;

**IT IS FURTHER ORDERED** if Defendants contemplate a motion to dismiss, the parties must meet and confer before the motion is filed. Defendants should take care to explain the reasons why they intend to move to dismiss the complaint, and Plaintiff should strongly consider filing an amended complaint. The Court expects this exercise in efficiency will obviate the need to file most motions to dismiss. Indeed, when the Court grants a motion to dismiss, it typically grants leave to amend unless it is "certain from the face of the complaint that any amendment would be futile or otherwise unwarranted." *Harris v. Meisner*, No. 20-2650, 2021 WL 5563942, at *2 (7th Cir. Nov. 29, 2021) (quoting *Runnion ex rel. Runnion v. Girl Scouts of Greater Chi. & Nw. Ind.*, 786 F.3d 510, 524 (7th Cir. 2015)). Therefore, it is in both parties' interest to discuss the matter prior to motion submissions. Briefs in support of, or opposition to, motions to dismiss should cite no more than ten (10) cases per claim. No string citations will be accepted. If Defendants file a motion to dismiss, Plaintiff is hereby warned that he must file a response, in accordance with Civil Local Rule 7 (E.D. Wis.), or he may be deemed to have waived any argument against dismissal and face dismissal of this matter with prejudice;

**IT IS FURTHER ORDERED** that the agency having custody of Plaintiff shall collect from his institution trust account the $334.13 balance of the filing fee by collecting monthly payments from Plaintiff's prison trust

account in an amount equal to 20% of the preceding month's income credited to Plaintiff's trust account and forwarding payments to the Clerk of Court each time the amount in the account exceeds $10 in accordance with 28 U.S.C. § 1915(b)(2). The payments shall be clearly identified by the case name and number assigned to this case. If Plaintiff is transferred to another county, state, or federal institution, the transferring institution shall forward a copy of this Order along with his remaining balance to the receiving institution;

**IT IS FURTHER ORDERED** that a copy of this Order be sent to the officer in charge of the agency where Plaintiff is confined; and

**IT IS FURTHER ORDERED** that the Clerk's Office mail Plaintiff a copy of the guides entitled "Answers to Prisoner Litigants' Common Questions" and "Answers to Pro Se Litigants' Common Questions," along with this Order.

Dated at Milwaukee, Wisconsin, this 17th day of September, 2025.

BY THE COURT:

_____
J. P. Stadtmueller
U.S. District Judge

Plaintiffs who are inmates at Prisoner E-Filing Program institutions shall submit all correspondence and case filings to institution staff, who will scan and e-mail documents to the Court. Prisoner E-Filing is mandatory for all inmates at Columbia Correctional Institution, Dodge Correctional Institution, Green Bay Correctional Institution, Oshkosh Correctional Institution, Waupun Correctional Institution, and Wisconsin Secure Program Facility.

Plaintiffs who are inmates at all other prison facilities, or who have been released from custody, will be required to submit all correspondence and legal material to:

> Office of the Clerk
> United States District Court
> Eastern District of Wisconsin
> 362 United States Courthouse
> 517 E. Wisconsin Avenue
> Milwaukee, Wisconsin 53202

**DO NOT MAIL ANYTHING DIRECTLY TO THE COURT'S CHAMBERS**. If mail is received directly to the Court's chambers, **IT WILL BE RETURNED TO SENDER AND WILL NOT BE FILED IN THE CASE**.

Plaintiff is further advised that failure to timely file any brief, motion, response, or reply may result in the dismissal of this action for failure to prosecute. In addition, the parties must notify the Clerk of Court of any change of address. **IF PLAINTIFF FAILS TO PROVIDE AN UPDATED ADDRESS TO THE COURT AND MAIL IS RETURNED TO THE COURT AS UNDELIVERABLE, THE COURT WILL DISMISS THIS ACTION WITHOUT PREJUDICE**.