# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF WISCONSIN

---

**DYLAN N. BORGEN,**

    **Plaintiff,**

  **v.**
                                    **Case No. 25-cv-863**

**EDDIE EDWARDS, *et al.*,**

    **Defendants.**

---

## ORDER

---

Plaintiff Dylan N. Borgen brought a lawsuit under 42 U.S.C. § 1983 and proceeds on an Eighth Amendment claim against prison guard Pam Gayden for allegedly using excessive force against him. Borgen was also allowed to proceed on an Eighth Amendment claim against defendants Eddie Edwards, Bradley Everson, and Sgt. Michael Buettner for allegedly not obtaining Borgen medical attention after his encounter with Gayden. In their motion for summary judgment, the defendants argued that Borgen had failed to exhaust his administrative remedies, as required by the Prison Litigation Reform Act. Borgen said he did. I concluded that the factual dispute required an evidentiary hearing, which the court held on July 23. Upon consideration of the evidence, I conclude that the defendants have met their burden to demonstrate that the plaintiff failed to exhaust his administrative remedies.

The case arises out of an incident that occurred on October 22, 2024, when Borgen and defendant Gayden, a correctional officer, started arguing over Borgen's repeated requests to speak with a senior security officer. (ECF No. 1 at 1-2.) Gayden allegedly deployed an entire can of OC spray on the backside of Borgen's body. (*Id.*) Borgen asked the other defendants for medical care, but they denied his requests. (*Id.*)

Borgen filed one relevant inmate complaint regarding the matter, MSDF-2024-17399 (ECF No. 15-2 at 6.) Borgen signed the inmate complaint on November 12, 2024, some three weeks after the incident. (*Id.*) The inmate complaint was rejected pursuant to Wis. Admin. Code § DOC 310.09(6) because Borgen did not file it within 14 calendar days of the incident. (*Id.* at 2.) The defendants assert that Borgen did not appeal the rejection, as there is no record of such an appeal. (ECF No. 14, ¶ 5.) The defendants also note that Borgen did not include any explanation for missing the deadline in his inmate complaint. (ECF No. 13 at 2.) I will refer to this complaint as the "November 12 complaint."

Borgen asserts, however, that he filed an *earlier* inmate complaint on November 3, 2024, well within the 14-day deadline. (ECF No. 19 at 1.) At summary judgment, he provided a copy of this inmate complaint, which is substantially similar to MSDF-2024-17399, except that it has a signature dated November 3, 2024. (ECF No. 21-1 at 5.) The other major difference is that the top of the form is blank, indicating that no one within the inmate complaint processing department marked it as received. His brief says that the prison delayed or destroyed his complaint, (ECF

2

No. 19 at 2). At the hearing, however, he said that someone returned his complaint to him by slipping it under his cell door, unfiled and unprocessed, after several days or a week. I will refer to this complaint as the "November 3 complaint."

In addition to the November 3 complaint, there are two other documents worthy of mention. Borgen alleges that when he did not receive acknowledgement of receipt of his November 3 inmate complaint, he submitted an "inmate request/interview form (DOC-643)" to the ICE on November 12, 2024. (ECF No. 19 at 2.) He provides a copy of that request form, wherein he states, "I filed an inmate complaint after pursuing the chain of command. I've heard nothing from anyone! I will file another complaint inquiring on the status of my initial complaint and/or the outcome of your investigation." (ECF No. 21-1 at 7) (emphasis in original).

Borgen further asserts that once he received the rejection of the November 12 complaint, he filed an appeal on December 7, 2024, using the "request for review of rejected complaint form (DOC-2181)." (ECF No. 19 at 2.) This document says: "I filed a complaint on 11-3-2024, after following the required chain of command. I received no response. I then wrote "ICE" using a DOC-0643 on 11-12-2024 as well as submitting an additional complaint concerning the status of the first." (ECF No. 21-1 at 14.)

The defendants assert that there is no record of the institution ever having received the November 3 inmate complaint, the November 12 request-for-information form, or the December 7 appeal form. (ECF No. 22 at 2.) As noted earlier, the November 3 inmate complaint was never assigned a complaint number or marked as

3

received, and none of the documents submitted by Borgen in response to the motion for summary judgment have date stamps showing when they were received. (*Id.*) At summary judgment, the defendants argued that these documents "appear to be recently drafted fake complaints aimed at surviving Defendants' summary judgment on exhaustion grounds motion." (*Id.*)

The court conducted an evidentiary hearing to resolve the issue. *See Pavey v. Conley*, 544 F.3d 739, 742 (7th Cir. 2008). Borgen testified, explaining that he had filed the November 3 complaint by sliding it under his door, which was a normal practice. Then, a week or so later, someone gave it back to him, unfiled and unprocessed, without any explanation. The defendants called two witnesses who work at the institution. Ashley Schmidt testified that she is the one who fills in the top boxes on inmate complaints, wherein the institution indicates the date on which the complaint is received and assigns it a complaint number. (See, e.g., ECF No. 15-2 at 6.) She further explained that the complaint system had no record of either the unprocessed complaint or the appeal and the request-for-information slip. Emily Davidson also appeared and testified that the inmate complaint review system keeps track of all complaints but had no record of the documents the plaintiff alleged he filed in late 2024, other than the processed complaint. She further indicated that there would be a "paper trail" in the system if someone from the institution had deleted certain documents from the system. There is no indication that any deletions occurred, nor why anyone within the institution would harbor that motivation.

4

Several reasons cause me to conclude that the defendant did not exhaust his administrative remedies by filing a complaint within 14 days of the incident. First, although the institutional witnesses acknowledged that human error could occasionally result in a single missed or lost document, there was no plausible explanation for how the institution could fail to have a record of all *three* documents the plaintiff provided at summary judgment. The witnesses confirmed that each one of them—the unprocessed complaint, the appeal, and the request for information—would have resulted in some kind of paper trail and a processing number. And yet there is no record in the ICRS of any of them. So, while it's plausible that the institution could mishandle a single document, the absence of records for all three different documents filed on different dates is hard to explain. It would be an amazing coincidence if the only three documents relating to an alleged November 3 complaint were all mishandled by the institution. It also means that the only documentary evidence that there *was* a November 3 complaint are found in documents that themselves have no indication that they were ever filed. This, on its own, suggests none of these documents was ever actually filed.

Second, the request for information is dated November 12, the same date as the November 12 complaint that the institution actually did receive and process. It is unclear why the institution would receive and process the November 12 *complaint* but then have no record of the request for information purportedly dated the same date. Presumably the plaintiff would have filed both of them at the same time. Again,

5

this suggests that the request for information, like the unprocessed complaint, was never filed at all.

Third, the November 12 complaint makes no mention of any earlier inmate complaints. Interestingly, it does say that the plaintiff had previously written a "request slip to Capton Gloudemans [sic]" inquiring why the plaintiff was "in the hole" and asking how the situation with defendant Gayden had been resolved. (ECF No. 15-2 at 6.) (Ashley Schmidt testified that a request slip is not an inmate complaint.) The November 12 complaint indicates that the plaintiff's earlier request slip had "got no response." *Id.* It is curious that the one complaint we know the institution received does not make any mention of the earlier unprocessed complaint—a pretty big omission. Recall that the plaintiff testified that he filed the complaint November 3, but the document was returned to him unfiled a week or so later. So, by November 12, in the plaintiff's telling of events, either he had already received the document back, unfiled, or the institution had not yet done anything with the complaint at all despite the passage of nine days. Either scenario would have been worthy of inclusion in the plaintiff's November 12 complaint, and yet the complaint is silent. Instead, the complaint mentions a request to a Capt. Gloudemans for information about the incident. Under the circumstances, had a complaint actually been filed previously, it would have been unusual to omit any reference to that complaint. The absence of any mention of the previous complaint suggests there *was* no previous complaint.

Fourth, none of the documents produced in this case, including the one complaint that the institution received, mentions the assertion that the November 3

6

complaint had been returned to the plaintiff unfiled. The November 12 information request and the December 7 appeal both indicate that he had filed a complaint but received "no response." (ECF No. 21-1 at 14.) Plaintiff's own summary judgment brief suggests the November 3 complaint had been delayed or destroyed by defendants, not that it had been returned to him unfiled. (ECF No. 19 at 2.) Thus, the assertion during the hearing that some unnamed prison staffer had simply returned the November 3 complaint to him appears novel and finds no support even in the plaintiff's own records.

Finally, there was no testimony explaining why the institution would simply hand back a complaint to an inmate unfiled, as the plaintiff testified. This court has never heard of such a thing occurring, and it flies in the face of the institution's practice of documenting every request or complaint that comes in. Moreover, there was no testimony providing any reason that anyone working at the institution would have done that. The grievance regarding Gaydon appears to be a run-of-the-mill allegation of excessive force arising out of an altercation, the kind of event that is commonplace in correctional institutions. There is nothing so unusual about the allegations that one would suspect some kind of cover-up or abnormal treatment of the plaintiff's grievance.

In sum, the fact that there is no record of any of the three documents the plaintiff alleges he filed strongly suggests that none of them were ever filed. On top of that, the one grievance we know *was* filed makes no mention of any earlier grievance. Finally, the assertion that the November 3 grievance was returned to the

7

plaintiff unfiled is unusual on its face and finds no support in the written record either. Ultimately, it seems likely that the plaintiff had asked someone for information about the incident in question, but he did not file an actual grievance until November 12, which was about a week too late.

For these reasons, I conclude the defendants are entitled to judgment for failure to exhaust administrative remedies. The case is **ordered DISMISSED without prejudice** for failure to exhaust administrative remedies.

Dated in Milwaukee, Wisconsin this 24th day of July, 2026.

STEPHEN DRIES
United States Magistrate Judge

8